THE CHICAGO CITY RAILWAY COMPANY

*v.*

P. H. O'DONNELL, Admr.

*Opinion filed February 17, 1904.*

1. STREET RAILWAYS—*party is liable for wanton injury to trespasser.* A street car company is not bound to exercise toward a newsboy stealing a ride the care due to a passenger, but it is bound not to inflict wanton or willful injury upon him.

2. SAME—*case must go to the jury if conflicting evidence tends to show wanton injury.* Evidence that conductor in charge of defendant's east-bound car by his threatening attitude compelled a trespassing newsboy to jump from the rapidly moving car, in consequence of which he fell upon the track and was run over and killed by a west-bound car, requires the submission of the case to the jury although the evidence is contradicted.

3. PLEADING—*when an objection must be taken by special demurrer.* An objection that a count in a declaration for negligence avers different sets of facts, either of which will justify a recovery, must be pointed out by special demurrer.

4. SAME—*when charges in count for negligence are divisible.* Where a single count charges that the conductor of defendant's east-bound car wantonly compelled plaintiff's intestate to jump from the moving car, causing him to fall in a helpless condition on the west-bound track, and that the motorman of the west-bound car wantonly ran over and killed said intestate, the charges are divisible, and in the absence of demurrer, proof of the former charge will warrant a recovery, even though the motorman west-bound was without fault.

*Chicago City Railway Co.* v. *O'Donnell,* 109 Ill. App. 616, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

WILLIAM J. HYNES, SAMUEL S. PAGE, and WATSON J. FERRY, (MASON B. STARRING, of counsel,) for appellant:

The charge in the declaration of willfulness and wantonness was not proved by proof of negligence only, for wantonness is such a want of care and regard for the rights and safety of others as implies a disregard of consequences, while negligence is a failure to exercise rea-

sonable or ordinary care. *Railway Co.* v. *Bodemer*, 139 Ill. 596; 1 Thompson on Negligence, secs. 22, 23.

It is a maxim in pleading that everything shall be taken most strongly against the party pleading, and that where two meanings present themselves that construction shall be adopted which is most unfavorable to the pleader. *Lemon* v. *Stevenson*, 36 Ill. 49; Gould's Pl. 141; *Gross* v. *Ankenbrandt*, 124 Ill. 54; Stephens' Pl. (Tyler's 3d Am. ed.) 333, and authorities cited; *Halligan* v. *Railroad Co.* 15 Ill. 558.

A party must recover, if at all, upon the case made for himself by his declaration. He may not make one case by his allegations and recover on a different case made by the proof. *Moss* v. *Johnson*, 22 Ill. 633.

If the pleader, though needlessly, describe the tort, and the means adopted in effecting it, with minuteness and particularity, or the proof should substantially vary from the statement, there will be a fatal variance, which will occasion a non-suit. 1 Chitty's Pl. (7th Am. ed.) 427; *Bloomington* v. *Goodrich*, 88 Ill. 558.

It is the defendant's right to insist that the grounds upon which the plaintiff claims the right to recover shall be clearly stated and that the case made in the declaration shall be proved as alleged. *Railway Co.* v. *Friedman*, 146 Ill. 583; *Railroad Co.* v. *Morkenstein*, 24 Ill. App. 128.

One cannot charge in his declaration, as a ground of action, a specific act of negligence and succeed on the trial by proving a different act. *Railroad Co.* v. *Bell*, 112 Ill. 360; *Railroad Co.* v. *Foss*, 88 id. 551; *Ebsery* v. *Railway Co.* 164 id. 518.

JAMES C. McSHANE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an action on the case instituted by appellee, as administrator of the estate of Michael B. Rowen, deceased, in the superior court of Cook county, to recover

damages for the death of said Michael B. Rowen, who was run over and killed by one of appellant's cars. The declaration alleged that his death was caused by willful and wanton conduct on the part of servants of appellant. The plea was the general issue, and a trial resulted in a verdict of $5000 for appellee. Upon the argument of a motion for a new trial appellee remitted $1500, and the court overruled the motion and entered judgment for $3500 and costs. The Appellate Court for the First District affirmed the judgment.

At the conclusion of the evidence in the case defendant entered a motion to instruct the jury to find it not guilty, and the motion was denied.

The declaration contained three counts, but a demurrer was sustained to the first count and the case went to trial on the second and third. The second count alleged that Michael B. Rowen was a minor, aged nine years, and was lying in a helpless condition on the defendant's track in the city of Chicago; that by the exercise of ordinary care on the part of defendant's servants in charge of one of its cars his presence could have been discovered and the car could have been stopped before running over him, but that defendant's servants recklessly, negligently and improperly ran the car over him and killed him. The third count alleged that defendant operated double tracks running east and west on Root street, in said city; that Michael B. Rowen was riding, but not as a passenger, on one of defendant's cars which was running east at such a high rate of speed as to make it dangerous for a person to alight therefrom; that the conductor in charge of said car willfully, wantonly and recklessly, by ordering Rowen to get off the car and by a threatening and menacing attitude toward him, and by attempting to strike and grab him, compelled him to jump from the car, and in doing so he was thrown and fell with great force on the track for west-bound cars, so as to render him helpless; that while so lying in a

helpless condition defendant was running another car west, and the servants of defendant in charge of the same, by the exercise of ordinary care, could have discovered him lying on the track, but that they wantonly, recklessly and negligently ran the car over him and killed him.

There was no evidence tending to sustain the second count. The accident occurred in the evening of January 5, 1900, after dark, and the evidence showed, without contradiction, that the motorman in charge of the westbound car had no knowledge that any one was lying upon the track, nor any reason to suspect that such was the case, until he received a warning, and that he made every possible effort to stop the car and prevent the accident. There was an entire failure to prove either willful, wanton or negligent conduct on the part of any one in charge of that car. The only evidence tending to sustain a cause of action related to the alleged actions of the conductor of the east-bound car under the charge made in the third count. There were double tracks in Root street, the east-bound cars using the south track and the west-bound the north track. Passengers were not allowed to get on or off the cars from the side next to the adjoining track, and the cars were equipped with iron gates on that side to keep passengers from getting on or off. When the east-bound car reached the Fort Wayne tracks the conductor got off and preceded the car across the railroad tracks and then got on at the front end of the car, coming through and collecting fares. As the car was so crossing the Fort Wayne tracks, Michael B. Rowen, who was a newsboy nine years old, got on the lower step next to the track for west-bound cars, outside of the iron gate. He had some newspapers under his arm and held on to the irons by his hands. A young man named Garfield Andrews stood inside the gate in front of Rowen to conceal him from the sight of the conductor. The conductor having passed through the car to the rear, came out on

the middle of the platform, and Rowen either whistled or Andrews spoke to him, which attracted the attention of the conductor and he asked Andrews who was behind him. Andrews stepped to one side and the conductor saw the boy. The liability of the defendant depends upon what the conductor then did, and that, with the speed of the car, is the only disputed fact in the case. There were but two persons who knew anything about it, one being Garfield Andrews and the other John Nelson, the conductor, and they contradicted each other. Andrews testified that the conductor told the boy to get off, and raised his arm in a threatening attitude and moved toward him; that the witness told the conductor the car was going too fast, and that when the conductor told the boy to get off and moved toward him in a threatening manner, the boy let go and jumped off. The conductor testified that when Andrews moved aside and he saw the boy hanging on the hand-rail next the gate, the witness said, "What are you doing there?" that Andrews said, "Oh, let him ride;" that the boy leaned forward as though he were going to let go or fall off, and the witness said, "Hold on there," and that at the same moment the boy swung aside and jumped off. The evidence for the plaintiff tended to show that the car was going eighteen or twenty miles an hour and the evidence for the defendant was that it was going seven or eight miles an hour. The conductor testified that he did not want the boy to get off at that time; that he did not know him or attempt to make him get off, and that he would not want the boy to jump off going at the rate of speed the car was moving, because he would be likely to fall and be hurt. When the boy swung off, his feet went out from under him and he tripped or fell across the other track. A car was coming from the other way, and Andrews jumped off and ran toward the other car, holding up his hand and shouting. The conductor rang his bell for an emergency stop and then jumped off too. As the cars approached

each other the gongs of both were sounded. Andrews and the conductor both shouted to the motorman of the west-bound car and did everything they could to stop it, and when the motorman saw and heard the warnings he did everything he could to stop.

The boy was not a passenger and had no intention of paying fare, but was trying to get a ride by standing on the lower step and hanging on to the iron outside of the gate, where passengers were not received or allowed to enter the car. The defendant was not bound to exercise toward him the care owing to a passenger, but it was bound to not wantonly or willfully inflict injury upon him. The testimony of Andrews tended to prove a willful and wanton injury and required the submission of the issue to the jury. It seems to be conceded that his testimony did tend to prove such an injury, but it is insisted that the testimony of the conductor was the more probable, and that the circumstances of the case should have convinced the court and jury of its truth. That was a question for the Appellate Court which is no longer open to inquiry. Cars were passing very frequently on the adjoining track, and the tracks were so close together that passengers were not allowed to enter or leave the car on the side next the other track, doubtless because of the danger. If the testimony of Andrews concerning the action of the conductor was believed, the circumstances tended to show that the accident was a natural and probable consequence of the wrongful act, and such as a person of ordinary prudence ought to have foreseen would be likely to result.

It is also assigned as error that the court gave, at the request of plaintiff, the following instruction:

"The court instructs the jury, that if you believe, from the evidence, that defendant's east-bound car, at the time and place in question, was running at such a high rate of speed as to be dangerous for deceased, or any ordinary person so situated, to jump from said car,

and that said conductor, while acting within the scope
of his authority as such conductor, if he was so acting,
willfully and wantonly compelled deceased to jump from
said car in manner and form as charged in the declara-
tion, if he did do so, and while it was running at such
rate of speed, and that said conductor's conduct in this
regard showed a reckless disregard of deceased's safety,
and that deceased was thereby thrown down on the ad-
joining track and rendered helpless, and while so lying
upon said track was run over and killed by the west-
bound car before it could be stopped, then you should
find the defendant guilty, even though you should find,
from the evidence, that there was no fault upon the part
of the motorman of the west-bound car."

The rule of law stated in the instruction is correct.
If the conductor of the east-bound car was guilty of a
willful and wanton act which was the efficient cause of
the deceased falling upon the track and lying there in a
helpless condition, where he would naturally be in dan-
ger of being run over and killed by west-bound cars, the
plaintiff could recover although the injury actually re-
sulted without fault of those in charge of the west-bound
car. (Cooley on Torts, 70.) The objection to the instruc-
tion is based on the form of the pleadings. The instruc-
tion could only apply to the third count, which charged
wanton and willful conduct on the part of both the con-
ductor of the east-bound car and the motorman of the
west-bound car, and it is contended that in order to jus-
tify a recovery it is necessary to prove both charges;
that the count stated but one cause of action based upon
two acts conjointly committed by the conductor of one
car and the motorman of another, from which the injury
resulted; that the proximate cause of the injury was
alleged to be the reckless and wanton negligence of the
motorman of the west-bound car and not the act of the
conductor in driving the deceased from the east-bound
car, and that the instruction was bad in permitting a

recovery where the evidence showed that there was no fault on the part of the motorman of the west-bound car. It is a settled rule that a plaintiff must recover, if at all, on the case stated in his declaration.  He cannot make one case by allegation and recover on another case made by the proof; but in this case there was an attempt to state in the declaration two independent wrongful acts, either of which would justify a recovery, and the question is whether the plaintiff was bound to prove both. If the deceased was lying in a helpless condition on the track, and the motorman of the west-bound car, by the exercise of ordinary care, could have discovered him, but wantonly, recklessly and negligently ran the car over him and killed him, the plaintiff could recover, regardless of the question how the deceased came to be on the track.  On the other hand, if the deceased was on the track in a helpless condition through the willful and wanton act of the conductor of the east-bound car, plaintiff could recover regardless of the question whether the act of the motorman was wrongful or innocent.  No objection was made to the count, and if there was a fault in it, it consisted in the violation of the rule that each count must state a single cause of action, and must not state different facts or sets of facts, any one of which would justify a recovery.  That objection is to be raised and pointed out by special demurrer.  The alleged acts of the conductor and motorman were not joint or concurrent.  Neither was the nature of the act of the motorman, as willful or otherwise, a matter of essential description of the injury which must be proved as laid.  We think that the charges were divisible, and the rule is, that in actions for torts plaintiff may prove a part of his charge if there be enough proved to sustain his charge.  (*Chicago and Grand Trunk Railway Co.* v. *Spurney*, 197 Ill. 471.) There was, therefore, no error in giving the instruction.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*