EUGENE FORD, Plaintiff-Appellant, *v.* UNIVERSITY OF ILLINOIS BOARD OF TRUSTEES, Defendants-Appellees.

First District (1st Division)    No. 77-295

Opinion filed December 19, 1977.

Leonard Karlin, of Chicago, for appellant.

James T. Otis and Robert E. Arroyo, both of Keck, Cushman, Mahin and Cate, of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Pursuant to two one-year contracts, plaintiff was hired by the University of Illinois Circle Campus (hereinafter referred to as university) as coordinator of the Dual Enrollment Program, a program designed to facilitate articulation between the university and Malcolm X. College. During the term of plaintiff's contracts, September 1, 1973, to August 31, 1975, the Dual Enrollment Program was realigned with other university programs. Plaintiff filed a complaint alleging that such realignment resulted in downgrading the Dual Enrollment Program and a lowering of plaintiff's rank within the administrative chain of command and a consequent breach of his contract of employment. Pursuant to defendants' motion, the trial court ordered the complaint dismissed for failure to state a cause of action.

Plaintiff now appeals from this order and contends that when an employee is engaged to fill a particular position, any unjustified reduction in rank or material duties of the employee is a violation of the contract of employment.

We affirm.

In his complaint plaintiff alleged that as coordinator of the Dual Enrollment Program he was originally to report directly to the staff administrator to the chancellor; that in July of 1974 he was ordered to report to Dr. Patricia McFate, associate vice chancellor of the Academic Support Program; and that in January of 1975 he was advised to report and be accountable to the director of the Educational Assistance Program, a branch of the Academic Support Program. Plaintiff alleged that the above reorganization was effected over his objection and concluded that it resulted in a downgrading and phasing out of the Dual Enrollment Program which reflected negatively on his professional capacities and lessened his opportunities for advancement in contravention to his contract of employment. Plaintiff further alleged that

he filed a grievance with the Professional Advisory Committee, a committee established to set up personnel policy guidelines for academic, administrative and professional employees. Plaintiff alleged that this procedure was an arbitration process which was adopted as refined by the chancellor of the university. The complaint also reflected that after a hearing the Professional Advisory Committee recommended that either the Dual Enrollment Program be reassigned to an appropriate administrative or academic unit, or that the Dual Enrollment Program be terminated and that "a concerted effort be made to reassign Mr. Ford to an appropriate administrative position at the University of Illinois Circle Campus so that his knowledge, education and experience, all of which seem to be singularly pertinent to this urban university, would not be lost to the University of Illinois Circle Campus." The chancellor did not respond to the recommendations of the Board, but instead notified the plaintiff that he was terminated as of August 31, 1975, the termination date of his written contract. Plaintiff concluded his complaint requesting the trial court to order the defendants to carry out the mandate of the arbitration.

■■ The question we must decide is whether plaintiff's complaint states a cause of action. In deciding this question, all facts properly pleaded as well as all reasonable inferences that can be drawn from these facts must be accepted as true. (*Miles Homes, Inc. v. Mintjal* (1974), 17 Ill. App. 3d 642, 307 N.E.2d 724; *Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 280 N.E.2d 552.) However, this court will disregard conclusions unsupported by allegations of fact (*Kuch & Watson, Inc. v. Woodman* (1975), 29 Ill. App. 3d 638, 331 N.E.2d 350), and will affirm the order of the trial court unless plaintiff's complaint alleges facts sufficient to state a cause of action. *Bauscher v. City of Freeport* (1968), 103 Ill. App. 2d 372, 243 N.E.2d 650; *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429.

As we review plaintiff's complaint, we note two possible theories under which plaintiff seeks recovery. The first of these theories is based upon the defendants' failure to follow the recommendations of the Professional Advisory Committee (hereinafter referred to as PAC). Indeed, the relief requested in plaintiff's complaint is that the trial court order the defendants to carry out the mandate of the Professional Advisory Committee. The pertinent allegations in the complaint are that plaintiff presented a grievance to the PAC; that the PAC had established an arbitration process for grievances; and that this arbitration process was "adopted as refined by the Chancellor of the University." Where plaintiff makes the above allegations in his complaint he also cites exhibits "H" and "I" which were attached to the complaint. Exhibit "H" is a letter from the chancellor of the University of Illinois to the chairman of the PAC which

outlined the scope and purpose of the PAC. Exhibit "I" is a later letter from the chancellor in which the chancellor, in pertinent part, outlined and put into effect an interim grievance policy involving the PAC. In both exhibits the chancellor indicated that the grievance policy and procedure did not entail arbitration and that the University did not have to follow the recommendations of the PAC.

■■ Exhibits attached to the complaint become part of the pleadings (*William Aupperle & Sons, Inc. v. American National Bank & Trust Co.* (1975), 28 Ill. App. 3d 573, 329 N.E.2d 458), and facts stated in such exhibits are considered the same as having been alleged in the complaint. (*Habada v. Graft* (1975), 33 Ill. App. 3d 810, 338 N.E.2d 255.) Furthermore, factual matters in such exhibits which conflict with the allegations of a complaint negate such allegations. (*Sharkey v. Snow* (1973), 13 Ill. App. 3d 448, 300 N.E.2d 279.) What is apparent when plaintiff's complaint is considered in light of the attached exhibits is that the PAC did not conduct an arbitration hearing and that the defendants were not required to follow its recommendations. In fact, the complaint is barren of any allegation that the defendants were so required. As a result, the complaint stated no cause of action based upon the defendants' failure to follow the recommendations of the PAC.

■■ The second possible theory on which plaintiff bases his cause of action is a breach of his contract of employment due to a realignment of the Dual Enrollment Program with other university programs. Plaintiff contends that if an employee is engaged to fill a particular position, any unjustified reduction in rank or material duties of the employee constitutes a breach of the contract of employment. It is true that an employer can breach a contract of employment in ways other than terminating an employee without cause before the expiration of the contract or failing to pay the employee the salary provided in the contract. Indeed, the Restatement of Agency provides as follows:

"A principal does not, by contracting to employ agent, thereby promise to provide him with an opportunity for work, but the circumstances under which the agreement for employment is made or the nature of the employment may warrant an inference of such a promise." (Restatement (Second) of Agency §433 (1957).)

A comment to section 433 affords the following explanation:

"If the agent's compensation is not dependent upon the amount of work done, as where he is to receive a fixed salary, a promise by the principal to furnish him with work is inferred from a promise to employ only if it is found that the anticipated benefit to the agent from doing the work is a material part of the advantage to be received by him from the employment. This anticipated benefit

may be the acquisition of skill or reputation by the employee or the acquisition of subsidiary pecuniary advantages, as in the case of the employment of public performers whose reputation will be enhanced by their appearance or diminished by their failure to appear.* * *" (Restatement (Second) of Agency §433, Comment c (1957).)

However, nowhere in his complaint does plaintiff allege that he was removed as coordinator of the Dual Enrollment Program, that he suffered a reduction in salary, or that his duties were materially altered. What plaintiff does allege is a reduction in rank, *i.e.*, he originally reported directly to the staff administrator to the chancellor and after realignment he reported to the director of the Educational Assistant Program, an appendage of the Academic Support Program. Although plaintiff cites numerous cases in support of the proposition that the instant allegations are sufficient to state a cause of action for breach of his contract of employment, none of the cited cases support the proposition that a reduction in rank is alone sufficient to constitute such a breach. Although we find no Illinois case directly in point, defendants refer us to a California case, *Rotter v. Stationers Corp.* (1960), 186 Cal. App. 2d 170, 8 Cal. Rptr. 690. In *Rotter,* the plaintiff was employed as superintendent of defendant's engraving department. During the term of his contract, plaintiff was informed that as part of an administrative realignment a person by the name of Acetta had been appointed superintendent of a newly combined diploma and engraving department and that plaintiff was to report to Acetta. In affirming the trial court's dismissal of plaintiff's complaint, the California Court of Appeals noted that although plaintiff was lowered a rung on the corporate chain of command, his responsibilities were to be substantially unchanged, that his salary was not affected, and that his physical labor was to remain as it had been. Similarly, in the instant case, plaintiff does not allege that he was removed from the position of coordinator of the Dual Enrollment Program, that his duties were materially altered, or that his salary was cut. The mere fact that plaintiff's program was realigned with another program and that he was lowered in the corporate chain of command are insufficient to state a cause of action for breach of his employment contract.

For the foregoing reasons, we affirm the order of the circuit court of Cook County.

Order affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.